# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAMESON GODFRY, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-4813 |
| STATE FARM MUTUAL INSURANCE CO., | : | |
| Defendant. | : | |
| | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                    March 4, 2009

Defendant State Farm Mutual Insurance Co. ("State Farm")[1] has filed a motion to dismiss

Counts I-IV of plaintiff Jameson Godfry's Complaint for failure to state a cause of action upon

which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion to

transfer this action to the District of Delaware pursuant to 28 U.S.C. § 1404(a).  The central issue

raised by defendant's motions is whether Pennsylvania or Delaware law applies to this case.  For

the reasons that follow, I hold that Pennsylvania law applies and that transferring venue is

inappropriate.  Therefore, I will deny both of defendant's motions.

## I.      Factual and Procedural Background

This dispute arises from Godfry's claim for uninsured motorist benefits following an

automobile collision.  On August 15, 2004, Godfry was a passenger in a vehicle driven by

---

[1] In its motion, State Farm asserts that the caption should designate it as "State Farm
Mutual Automobile Insurance Company" rather than "State Farm Mutual Insurance Company."  I
will use "State Farm" when referring to defendant in this Memorandum.

Randall Neil when the vehicle was involved in a collision in Delaware.  (Def.'s Mot. Dis. ¶ 4; Pl.'s Answer Def.'s Mot. Dis. ¶ 4.)  The vehicle was owned by Karen Neil, a Delaware resident. (Def.'s Mot Dis. ¶ 4; Pl.'s Answer Def.'s Mot. Dis. ¶ 4.)  State Farm provided automobile insurance coverage for Karen Neil's vehicle (the "insurance policy").  (Def.'s Mot. Dis. ¶ 5; Pl.'s Answer Def.'s Mot. Dis. ¶ 5.)   The other vehicle involved in the collision was uninsured. (Compl. ¶ 8; Def.'s Mot. Dis. ¶ 6.)   Godfry suffered several injuries, which required extended rehabilitation.  (Compl. ¶¶ 10, 14.)

After the collision, Godfry made an insurance claim for uninsured motorist benefits under the policy.  Godfry's claim was handled by State Farm claim representatives operating in Delaware.[2]  In August 2005 and again in August 2006, Godfry sent a demand to State Farm, offering to settle his claim for $65,000.  (Compl. ¶ 19.)  State Farm requested that Godfry visit Dr. Richard Morris for a medical examination.[3]  This examination occured in Wilmington, Delaware on January 23, 2006.  (*Id.* ¶ 17; Def.'s Mot. Dis. Ex. C, Letter from State Farm to Godfry's Attorney dated Dec. 23, 2005.)  Dr. Morris determined that Godfry had returned to his pre-collision activity levels.  (*See* Def.'s Mot. Dis. Ex. C., Letter from State Farm to Godfry's Attorney dated March 8, 2006).  On March 8, 2006, in reliance on Dr. Morris's examination, State Farm discontinued reimbursement for Godfry's medical expenses.  (*Id.*)

On May 8, 2006, Godfry rejected State Farm's offer of $7,500 to settle his claim.  On July

---

[2] Godfry and these claim representatives corresponded regularly between 2004 and 2006. (Def.'s Mot. Dis. ¶ 6; *see id.* Ex. C (written correspondence); Pl.'s Answer Def.'s Mot. Dis. ¶ 6.)

[3] Godfry alleges State Farm chose Dr. Morris to perform the examination because State Farm and Dr. Morris enjoyed an inappropriate, but nevertheless ongoing professional relationship.  (Compl. ¶¶ 16-18.)  Further, Godfry alleges that Dr. Morris's report was not "completely individualized" but rather contained form paragraphs.  (*Id.* ¶ 17.)

2

11, 2007, Godfry commenced a civil action against State Farm in the Philadelphia County Court of Common Pleas to enforce his rights under the insurance policy (the "state court action").  State Farm retained Joseph Ross, a Pennsylvania attorney, to defend the state court action.  (Def.'s Mot. Dis. ¶ 9; Pl.'s Answer Def.'s Mot. Dis. ¶ 6.)   Godfry asserts that after hiring Ross, correspondence and settlement discussions may have originated in Delaware, but were implemented by Ross in Pennsylvania.  (Pl.'s Answer Def's Mot. Dis. ¶ 9.)

Prior to trial, Godfry and State Farm attended two court-ordered settlement conferences in Pennsylvania.  (Pl.'s Mem. Law Resp. Def.'s Mot. Dis. at 2.)  Gary Brownstein, Esquire, presided over the first settlement conference and recommended a settlement value of $35,000.  (Compl. ¶ 26.)  The Honorable William J. Manfredi presided over the second settlement conference and, like Mr. Brownstein, Judge Manfredi concluded that the state court action should settle for $35,000.  (*Id.* ¶ 31.)  Despite these neutral evaluations, State Farm never increased its offer to settle.  (*Id.* ¶ 34.)  The state court action, therefore, proceeded to trial on August 26, 2008.  Godfry asserts that during the trial Dr. Morris committed perjury when discussing the cause and extent of Godfry's injuries.  (*Id.* ¶ 33.)  Godfry further asserts that State Farm knew or should have known that Dr. Morris committed perjury because Dr. Morris's deception was "apparent" from his previous deposition testimony.  (*Id.*)  Nonetheless, the jury returned a $50,000 verdict in favor of Godfry.

On September 8, 2008, Godfry commenced the instant diversity action in the Philadelphia County Court of Common Pleas, arguing that State Farm's failure to fairly and reasonably settle the state court action and knowing use of perjured testimony at trial, *inter alia*, constituted bad faith.  Godfry's Complaint asserts five counts: (1) violation of Pennsylvania's Unfair Insurance

3

Practices Act, 40 Pa. Cons. Stat. § 1171 *et seq.*; (2) bad faith pursuant to 42 Pa. Cons. Stat. §
8371; (3) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73
Pa. Cons. Stat. § 201-1 *et seq.*; (4) common law bad faith under Pennsylvania law; and (5)
common law bad faith under Delaware law.  State Farm removed the action to federal court on
October 8, 2008 pursuant to 28 U.S.C. § 1441(a) and § 1332.  On October 24, 2008, State Farm
filed a motion to dismiss Counts I-IV of plaintiff's Complaint pursuant to Federal Rule of Civil
Procedure 12(b)(6) and a motion to transfer venue to the District of Delaware pursuant to 28
U.S.C. § 1404(a).  In its motion, State Farm argues that Pennsylvania law does not provide a
cause of action for Counts I and III and that Delaware law applies to this case, thereby
necessitating the dismissal of Counts II and IV, as these counts are premised on Pennsylvania
law.  Godfry responded to State Farm's motion on November 4, 2008.  In his response, Godfry
concedes the dismissal of Counts I and III, but argues for the application of Pennsylvania law to
the balance of his Complaint.  State Farm filed its reply on November 14, 2008.

     As plaintiff concedes the dismissal of Counts I and III of his Complaint, the court will
dismiss these counts with prejudice.  Therefore, two issues remain: (1) whether Pennsylvania's
choice of law principles require the court to apply Pennsylvania or Delaware law to Godfry's bad
faith claims and (2) whether, for the convenience of the parties and witnesses and in the interest
of justice, I should exercise my discretion under 28 U.S.C. § 1404(a) and transfer this case to the
District of Delaware.

## II.     Choice of Law[4]

The first issue concerns whether Pennsylvania or Delaware substantive law applies to this case.[5]  State Farm argues that Delaware law applies because the automobile collision occurred in Delaware, the named insured is a Delaware domiciliary, the insurance policy was negotiated and executed in Delaware, and plaintiff's insurance claims were administered by Delaware claim representatives.  Godfry contends that Pennsylvania law applies because he is a domiciliary of Pennsylvania, the underlying state court action occured in Pennsylvania and was defended by a Pennsylvania attorney, and most of the acts relevant to his bad faith claims occured in Pennsylvania.  Because this is a diversity action, I apply the choice of law rules of the forum state to determine the applicable body of substantive law.  *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Accordingly, Pennsylvania choice of law rules apply.

The Pennsylvania Supreme Court has adopted a "flexible rule" for choice of law questions, "which permits analysis of the policies and interests underlying the particular issue before the court."  *Griffith v. United Airlines, Inc.*, 203 A.2d 796, 805 (Pa. 1964); *see also, e.g.,*

---

[4] Courts are hesitant to consider the merits of a choice of law issue at the motion to dismiss stage.  *See, e.g., Children's Hosp. of Phila. v. Horizon NJ Health*, No. 07-5061, 2008 WL 4330311, *7 (E.D. Pa. Sept. 22, 2008) (reasoning that "a motion to dismiss does not present an appropriate forum for a choice of law . . . determination"); *Hodgson v. Man Fin. Inc.*, 06-1944, 2006 WL 3861068, at *1 (E.D. Pa. Dec. 29, 2006) (withholding choice of law determination until conclusion of discovery).  By declining to consider a choice of law challenge at an early stage in the litigation, courts properly avoid a fact-specific inquiry prior to the parties conducting discovery and fully briefing the choice of law issue.  This case presents a different situation.  Because this case arises from a previous state court action, both parties are familiar with the relevant forum contacts and have fully briefed the choice of law issue.  Thus, the reasons for declining review of a choice of law issue at the motion to dismiss stage are not implicated by this case, and I will entertain the merits of State Farm's motion accordingly.

[5] The insurance policy does not contain a choice of law provision.

5

*Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 643-44 (Pa. Super. Ct. 2006).  This

approach "gives to the place having the most interest in the problem paramount control over the

legal issues arising out of a particular factual context and thereby allows the forum to apply the

policy of the jurisdiction most intimately concerned with the outcome of the particular

litigation."  *Griffith*, 203 A.2d at 806 (internal quotation marks and alterations omitted).  The

*Griffith* "interest/contacts" approach applies to insurance contract disputes.  *Hammersmith v. TIG

Ins. Co.*, 480 F.3d 220, 227-28 (3d Cir. 2007).

　　　　The first step of the interest/contacts analysis requires a determination of whether an

"actual or real" conflict exists between the substantive laws of the involved jurisdictions.  *Id.* at

230.  If an actual conflict exists, I will "examine the governmental policies underlying each law,

and classify the conflict as 'true,' 'false,' or an unprovided-for situation.[6]"  *Id.*  Only if I find a

true conflict must I "determine which state has the 'greater interest in the application of its law.'"

*Id.* at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).  If I must determine

which state harbors the greater interest, I will consider "both the [Conflict of Laws] Restatement

II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of

the relevant state policies with respect to the controversy)."  *Id.*  This analysis is not a "'mere

counting of contacts'"; rather, I must weigh the relevant contacts "on a qualitative scale."  *Id.*

(quoting *Cipolla*, 267 A.2d at 856).

### A.　　　Identifying a Conflict

　　　　Under the *Hammersmith* approach, I must first determine whether an "actual" conflict

────────────────

[6] "An unprovided for case is one in which neither state's interests would be impaired if its
laws were not applied."  *Id.* at 230.  Neither party contends that this is an unprovided-for case.

exists between Pennsylvania and Delaware bad faith insurance claims.  *Id.* at 230.  The parties

both contend that a conflict exists between the two bodies of law.  After review, I agree.

Under Pennsylvania law, an insured alleging bad faith on the part of an insurer can file

either (or both) a bad faith claim pursuant to 42 Pa. Cons. Stat. § 8371[7] or a breach of contract

claim for breach of the implied duty of good faith.[8]  The Pennsylvania legislature did not define

"bad faith" as it is used in § 8371, and the Pennsylvania Supreme Court has yet to supply a

definition.  *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005).

Nonetheless, both the Third Circuit (whose decisions are of course binding on me) and

Pennsylvania Superior Court have predicted the Pennsylvania Supreme Court would require

insureds to prove (1) "the insurer did not have a reasonable basis for denying benefits under the

applicable insurance policy" and (2) "the insurer knew or recklessly disregarded its lack of

reasonable basis in denying the claim."  *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178,

1189 (Pa. Super. Ct. 2007) (quoting *Employers Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 490-

---

[7] Section 8371 provides:
In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

[8] *See Ash v. Continental Ins. Co.*, 932 A.2d 877, 884-85 (Pa. 2007) (holding that § 8371 is a statutory tort that does not displace common law breach of contract claim); *Birth Central v. St. Paul Cos., Inc.*, 787 A.2d 376, 389 (Pa. 2001) (holding that common law recovery of compensatory damages not displaced by enactment of § 8371); *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 431 A.2d 966, 970 (Pa. 1981) (holding that no common law cause of action sounding in tort existed under Pennsylvania common law to remedy bad faith actions of an insurer); *see also Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 236-37 (3d Cir. 2003) (holding that Pennsylvania law recognizes two independent bad faith claims—statutory bad faith and a contract claim for breach of the implied duty of good faith).

91 (W.D. Pa. 2007) (citing *Tertletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994))).  If an insured establishes these elements, § 8371(1)-(3) permits recovery of interest, court costs, attorney fees and punitive damages.  If an insured establishes a breach of the implied duty of good faith (i.e., a breach of the insurance contract), an insured can recover typical contract remedies, including compensatory damages.  *See Birth Central v. St. Paul Cos., Inc.*, 787 A.2d 376, 387 (Pa. 2001) (holding that § 8371 "does not prohibit courts from awarding compensatory damages that are otherwise available" in the common law bad faith action). Recovery on the contract claim, however, does not include punitive damages.  *See Baker v.  Pa. Nat'l Mut. Cas. Ins. Co.*, 536 A.2d 1357, 1361-62 (Pa. Super. Ct. 1987).[9]

Unlike Pennsylvania, Delaware has no statutory cause of action to remedy an insurer's bad faith.  Instead, "[w]here an insurer fails to investigate or process a claim or delays payment in bad faith, it is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations."  *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264 (Del. 1995).  If an insured establishes a breach of these implied obligations (i.e., establishes a "*Tackett*" claim), Delaware permits general contract remedies.  In addition, punitive damages "may be available in the context of a [*Tackett* claim] if the denial of coverage is wilful or

---

[9] Concurring in *Birth Central*, Justice Nigro succinctly described the state of Pennsylvania's bad faith jurisprudence:

> [T]he law of [Pennsylvania] establishes that there are two separate 'bad faith' claims that an insured can bring against an insurer—a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith claim sounding in tort under 42 Pa.C.S. § 8371.  Pursuant to the contract claim, an insured may recover traditional contract damages, including compensatories.  Pursuant to the statutory claim, however, the insured may recover only those damages specifically set forth in . . . § 8371, *i.e.*, punitive damages, attorney fees, court costs and interest.

787 A.2d at 390 (emphasis in original).

malicious . . . and when the bad faith actions of an insurer are taken with a reckless indifference or malice toward the plight of the [insured]." *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 446 (Del. 1996) (alterations omitted).  Potential recovery for an insurer's bad faith, however, generally does not include attorney fees.  *See Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 370 (Del. Super. Ct. 1982) ("In an action *at law*, a court may not order the payment of attorney's fees as part of costs to be paid by the losing party unless the payment of such fees is authorized by some provision of statute or contract." (emphasis added)).  Delaware applies the American rule for the recovery of attorney fees, which requires parties to shoulder costs and fees attendant to a lawsuit unless a statute or contract provision creates an exception.  *Id.*  Because no Delaware statute permits the recovery of attorney fees in bad faith actions, absent a contractual provision permitting such recovery, attorney fees are not recoverable.  *Id.* (holding that "there is no statutory basis for an award of attorney's fees" in an automobile insurance case involving breach of implied duty of good faith and fair dealing).[10]

     In short, the remedies available to a successful plaintiff suing an insurer for bad faith under Delaware law differ from those under Pennsylvania law.  While a plaintiff can recover punitive damages and compensatory damages under both Pennsylvania and Delaware law, under Delaware law a plaintiff cannot recover attorney fees.  Because Delaware and Pennsylvania law differ materially with respect to an insured's potential recovery, an actual conflict exists.  *Cf. Aircraft Guar. Corp. v. Strato-Lift, Inc.*, 951 F. Supp. 73, 77 (E.D. Pa. 1997) (finding true conflict because "Texas's statutory entitlement to attorney's fees in contract actions stands in

---

[10] The insurance policy in this case contains no provision authorizing the award of attorney fees.

direct contrast to the affirmative policy decisions of Pennsylvania and Connecticut not to provide such an entitlement").  Accordingly, I must proceed to classify the conflict.

### B.        Classifying a Conflict

A "true" conflict exists "if the governmental interests of both jurisdictions would be impaired if their law were not applied."  *Hammersmith*, 480 F.3d at 230 (internal quotations marks omitted) (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 n.15 (3d Cir. 1991)).  A "false" conflict exists "if only one jurisdiction's governmental interest would be impaired by the application of the other jurisdiction's laws."[11]  *Id.* at 229 (internal quotations marks omitted) (citing *Lacey*, 932 F.2d at 187).  The parties both contend that a true conflict exists.  I agree.

In Pennsylvania, "protection of insured parties is the primary public policy behind laws governing duties owed by an insurer to an insured . . . ."  *See Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) (finding that Pennsylvania had "little interest in furthering the primary policy" because the insured was not a resident of Pennsylvania); *see also Kilmer v. Conn. Indem. Co.*, 189 F. Supp. 2d 237, 246 (M.D. Pa. 2002) ("The Third Circuit has made clear that the protection of insured parties is the primary public policy underlying laws governing duties owed by an insurer to an insured.").  Here, Godfry is an insured under Karen Neil's policy, as the definition of "insured" for purposes of uninsurance benefits encompasses passengers.  (*See* Def.'s Mot. Dis. Ex. B, Karen Neil's Insurance Policy, at 14 (defining "insured" for purposes of uninsured benefits).)  Because Godfry, the insured, is a Pennsylvania

---

[11] If a true conflict exists, I must conduct a deeper choice of law inquiry, focusing on the forum's interests and the parties' contacts with the forum.  *Hammersmith*, 480 F.3d at 231.  If a "false" conflict exists, "the court should apply the law of the state whose interests would be harmed if its laws were not applied."  *Id.* at 230 (internal quotations marks omitted) (citing *Lacey*, 932 F.2d at 187).

resident, Pennsylvania has a governmental interest in the application of its insurer bad faith laws.

Delaware also harbors an interest in applying its bad faith jurisprudence.  The collision—which prompted Godfry's insurance claim and subsequent state court action—occured in Delaware.  In addition, Godfry's insurance claim arose under a Delaware insurance policy and was administered by State Farm's claim representatives based in Delaware.  Certainly, Delaware has an interest in regulating and overseeing the behavior of insurance companies and their employees who conduct business in Delaware.  Though the Delaware legislature has not created a statutory claim, Delaware common law serves to protect insureds from the bad faith of an insurance company.  *See Tackett*, 653 A.2d at 264.  The implied covenant of good faith protects insureds by preserving the "*spirit* of the bargain rather than the letter, the adherence to *substance* rather than form."  *Dunlap*, 878 A.2d at 444 (emphasis in original).  Further, "[t]he implied covenant of good faith and fair dealing requires that the insurer act in a way that honors the insured's reasonable expectations" under the applicable insurance policy.  *Id.*  Because State Farm was administering a Delaware insurance policy from Delaware, Delaware evinces a governmental interest in regulating insurance companies, like State Farm, and protecting insureds, like Godfry.[12]

As both Pennsylvania and Delaware have an interest in applying their respective bad faith

---

[12] State Farm also argues that "Delaware has a strong interest in ensuring that there is an active marketplace for automobile insurers in Delaware."  (Def.' Reply Br. at 1.)  The two cases that State Farm cites to support its argument, however, do not do so as neither case involves a bad faith claim nor announces a general state policy concerning insurance policy rates.  *See Gray v. Allstate Ins. Co*, 668 A.2d 778, 781 n.3 (Del. Super. Ct. 1995) (involving insurance contract interpretation and opining as to the effect of liberal interpretation); *Cubler v. Rettig*, 93C-08-024, 1995 WL 163524 (Del. Super. Ct. Feb. 24, 1995) (addressing enforceability of exclusions in insurance policy and mentioning effect of exclusions on insurance rates).

jurisprudence, I find that a true conflict exists.

### C.   Contacts/Interests Analysis

"If a true conflict exists, the [c]ourt must then determine which state has the 'greater interest in the application of its law.'"  *Hammersmith*, 480 F.3d at 231 (citing *Cipolla*, 267 A.2d at 856).  To determine which state has the "greater interest,"  I will apply "the approaches of both [the Restatement (Second) of Conflicts] (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)."  *Id.* at 231 (citing *Griffith*, 584 F.2d at 1311).  The court must "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue," *Shields v. Consol. Rail. Corp.*, 810 F.2d 397, 400 (3d Cir. 1987), rather than merely count the contacts, *Cipolla*, 267 A.2d at 856.

### 1.   Contacts

Pursuant to *Hammersmith* I now turn my attention to "each state's contacts" under the Restatement (Second) of Conflict of Laws.[13]  480 F.3d at 231.  Section 193 of the Restatement (Second) of Conflicts of Law "specifically governs casualty insurance contracts."  *Id.* at 233.

---

[13] When analyzing and assigning weight to state contacts under the specific Restatement provisions applicable to this case, I am guided by the general choice of law principles, which are set forth in Restatement (Second) of Conflict of Laws § 6.  *See Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005).  The § 6 considerations include:
    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

Section 188(2) of the Restatement (Second) of Conflict of Laws governs contract actions generally. I will analyze the states' contacts under these sections in determining the appropriate state law to apply to plaintiff's common law contract claim. In addition, because the Pennsylvania Supreme Court has held that § 8371 sounds "primarily [in] the law of torts,[14]" I also will analyze the contacts set forth in Restatement (Second) of Conflict of Laws § 145, which concerns tort actions.[15]

### a.   Sections 193 and 188 contacts

Concerning insurance contracts, § 193 provides that "the validity of a contract for fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless *with respect to the particular issue*, some other state has a more significant relationship . . . ." *Id.* (emphasis added). Further, "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at

---

[14] *See Ash v. Continental Ins. Co.*, 932 A.2d 877, 884-85 (Pa. 2007). In *Ash*, the Pennsylvania Supreme Court addressed the issue of whether a § 8371 claim sounded in tort or in contract for purposes of determining the applicable statute of limitations. The *Ash* court reasoned that the bad faith statute created a duty independent of the implied duty of good faith and fair dealing, and that the duty imposed by § 8371 was imposed by the Pennsylvania legislature as a matter of social policy. *Id.* at 884. Because "the duty under § 8371 is one imposed by law as a matter of social policy, rather than one imposed by mutual consensus," the *Ash* court concluded that "an action to recover damages for a breach of that duty derives primarily from the law of torts." *Id.* at 885.

[15] The Restatement (Second) of Conflict of Laws distinguishes between tort and contract claims in the choice of law context. *See Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 470 (E.D. Pa. 1996) (noting that the Restatement provisions "differ significantly"). The differences between §§ 145 and 188 are significant, as each provision places emphasis on different aspects of a given transaction. *See id.* at 470. Importantly, as the lists of contacts in §§ 145 and 188 are non-exhaustive, I possess and will exercise the power to consider relevant contacts not enumerated in the specific Restatement provisions.

least during most of the period in question." *Id.* cmt. b.

Because State Farm believed Karen Neil would principally operate and garage the covered vehicle in Delaware, State Farm argues that the court should grant "[t]he location of the insured risk . . . greater weight than any other single contact in determining the state of the applicable law." *Id.* Allocation of "greater weight," however, is appropriate only when "the [insured] risk can be located, at least principally, in a single state." *Id.* The location of the covered vehicle is afforded "less importance . . . than it would be in the context of, for example, a policy of fire insurance for a building," as the "mobility of the insured risk makes it possible that an accident [could] occur in a state other than the state where the automobile is principally garaged." *Parker v. State Farm Ins. Co.*, 543 F. Supp. 806, 810 (E.D. Pa. 1982); *see also* § 193 cmt. b ("In the case of chattels, the significance of the state of the risk's principal location diminishes with the length of time that it can be anticipated the chattel will be in other states during the term of the insurance."). The covered vehicle's mobility in this case lessens the significance of the location of its garage in Delaware, particularly where the issue in dispute is not the automobile accident, but State Farm's alleged subsequent bad faith in handling this uninsured motorist claim.

More importantly, Karen Neil's vehicle is *not* the only insured risk covered by the policy. Instead, under the insurance policy, any person occupying the named insured's car is an "insured" for purposes of uninsured motorist coverage. (Def.'s Mot. Dis. Ex. B, at 14.) As a passenger covered by the policy is not necessarily a Delaware domiciliary, and in this case was a Pennsylvania domiciliary, the policy "covers a group of risks that are scattered throughout two or more states." § 193, cmt. b. The insured risk, therefore, is not only mobile (the covered vehicle),

14

but also scattered (potential passengers), further attenuating the relationship between the insured risk and Delaware.  Therefore, I find that § 193 offers limited guidance, and I turn to § 188(2), the general provision concerning contracts.  *See Hammersmith*, 480 F.3d at 233 (turning to § 188(2) contacts because § 193 contacts were "largely inapplicable").

Section 188(2) sets forth a non-exhaustive list of contacts for the court to consider when determining the applicable body of state law for general contract claims.  The relevant contacts to consider include, but are not limited to: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.  § 188(2).

Both parties agree that the insurance policy was issued and negotiated in Delaware.  Thus, the first two contacts weigh in State Farm's favor.  Likewise, both parties agree that the insurance policy was performed in Pennsylvania, as the acts constituting the alleged bad faith occured primarily in Pennsylvania, the settlement negotiation and trial occured in Pennsylvania, and the uninsured motorist benefits were paid to Godfry, a Pennsylvania resident.  The third contact therefore very strongly favors Godfry's position.  The parties differ in their opinion of the fourth contact: the location of the insured risk.  State Farm asserts that the subject matter of the insurance policy is Karen Neil's vehicle, which is garaged in Delaware.  Godfry contends that he, and not the vehicle, is the subject matter of the insurance policy, as he is the insured party.  The *Hammersmith* court reasoned that the "location of the subject matter of the contract[] refers to the location of the insured risk."  *Id.* at 234.  As I discussed previously, the insured risks in this case are multiple and scattered among two or more states.  Thus, this fourth contact is neutral.

15

The fifth contact also strongly favors Godfry's argument, as Godfry is the only party domiciled in an involved state.  Godfry is a Pennsylvania resident while State Farm is an Illinois corporation with its principal place of business in Illinois operating in both Pennsylvania and Delaware.  In conclusion, contacts one and two weigh in State Farm's favor and contacts three and five weigh in Godfry's favor.

Turning to a qualitative analysis of each of the contacts relative to the issues raised in Godfry's Complaint, I begin with contacts that favor application of Delaware law.  Although the insurance policy was executed in Delaware, this contact, standing alone, "is a relatively insignificant contact."  § 188 cmt. e.  The place of contracting garners importance only when packaged together with other forum contacts, for example, the place of negotiation, which "has an obvious interest in the conduct of the negotiations and in the agreement reached."  *Id.*  In this case, however, Godfry is not a party to the insurance policy and did not participate in negotiating its terms.  Because of Godfry's minimal role in the formation of the insurance policy, I find that this contact carries little weight.  Without any relevant negotiations in Delaware, the insurance policy's execution in Delaware stands alone and becomes "relatively insignificant" to my determination.  *Id.*

Conversely, that State Farm owed and paid uninsured benefits to a Pennsylvania insured has significance because "[t]he state where performance is to occur under a contract has an obvious interest in the nature of the performance and the party who is to perform."  *Id.*  In addition, by residing in Pennsylvania, Godfry and Pennsylvania enjoy an "enduring relationship."  *Id.*  Like "the place of contracting," Godfry's domicile gains more significance when grouped with other contacts with the forum, in particular the location of performance.  Thus, although the

16

§ 188(2) contacts are quantitatively split between Delaware and Pennsylvania, when weighed on a "qualitative scale" the contacts reveal a more significant relationship between the instant *contract* action and Pennsylvania. *Hammersmith*, 480 F.3d at 231.

   **b.   Section 145 contacts**

Next, I turn my attention to § 145 and Godfry's § 8371 statutory tort claim. As with § 188(2), § 145 sets forth a non-exhaustive list of contacts to consider when determining the applicable body of law for a tort claim. The relevant contacts include, but are not limited to: (1) the place where the injury occured, (2) the place where the conduct causing the injury occured, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. § 145(2).

The place of the injury "plays an important role" because "persons who cause injury in a state should not ordinarily escape liabilities imposed by local law . . . ." *Id.* cmt. e. Here, the injuries prompting this *bad faith* lawsuit occured exclusively in Pennsylvania.[16] State Farm's alleged bad faith affected only Godfry, who resided in Pennsylvania at all times relevant to this case. Therefore, the first contact weighs in favor of Godfry. The second contact, the place where the conduct occured, is particularly significant when, as is the case here, the issues in the litigation involve "standards of conduct." *Id.* However, as mentioned in the previous section, the injurious behavior in this case allegedly occured in both Delaware and Pennsylvania, but primarily Pennsylvania. Thus, this contact weighs somewhat in Godfry's favor. The third

---

[16] Although the collision giving rise to insurance coverage under the insurance policy occured in Delaware, the physical injuries sustained in the collision are *not* the basis of the instant lawsuit; rather, those injuries led to the uninsured motorist claim and the initial state court action.

contact, which covers the location, residence, and domicile of the parties themselves, weighs in plaintiff's favor for the same reasons it did under § 188(2), *see supra* section II.C.1.a.  Finally, the fourth contact directs my attention to the place where the relationship between the parties is centered.  This fourth contact is particularly significant when grouped with other forum contacts, such as the location of the injury.  *Id.*  In this case, the accident occured in Delaware, and Godfry's uninsured motorist claim arose under a Delaware insurance policy.  The claim was initially administered by State Farm claim representatives in Delaware.  On the other hand, the claim representatives corresponded with Godfry in Pennsylvania, and later State Farm participated in settlement conferences and other negotiations in Pennsylvania, and ultimately defended the state court action in Pennsylvania.  The relationship, it appears, has no central location; rather, the relationship appears split between Delaware and Pennsylvania.  However, because the later contacts occured in Pennsylvania, the fourth contact leans toward Godfry.  The § 145 contacts therefore weigh in Godfry's favor.  Indeed, none of the § 145 contacts decidedly favor the application of Delaware law.  Accordingly, the § 145 contacts reveal that Godfry's statutory tort claim has a more significant relationship with Pennsylvania.

### c.    Additional contacts

Finally, both parties ask that in addition to the Restatement contacts I consider other contacts between the parties and the involved forums.  Because §§ 145 and 188 are not exhaustive lists of contacts to consider, I will review additional, *relevant* contacts with Pennsylvania and Delaware that are not contained in these sections.  After review, I find that the additional contacts also favor application of Pennsylvania law.

Defendant focuses its argument on the location of the collision and the location of the

State Farm claim representatives who handled and initially administered Godfry's insurance claim, all of which have relevance to Godfry's underlying claim for uninsured motorist benefits arising out of the collisions.  State Farm's argument, therefore, misses the mark.  The location of the collision has little bearing on the central issue in Godfry's Complaint: State Farm's alleged bad faith in handling Godfry's uninsured motorist claim *after* the collision.  Second, while the claim was administered from Delaware, the claim representative consistently reached into Pennsylvania to contact Godfry regarding his claim.  Moreover, after plaintiff filed the state court action, State Farm hired a Pennsylvania attorney who handled the litigation, including the settlement conferences and the trial.  Plaintiff's allegations of bad faith are not limited to State Farm's behavior prior to the state court lawsuit.  Rather, the allegations encompass actions taken by State Farm during the pendency of the state court action in Pennsylvania.  Because State Farm reached into Pennsylvania to settle the claim and defend the state court action, I attach minimal weight to the location of State Farm's claim representatives.

As Godfry points out, the same reasons that dilute the importance of the claim representatives' physical location tighten the link between Pennsylvania and Godfry's claims.  Godfry filed the underlying action in the Philadelphia County Court of Common Pleas in July 2007 after attempts to settle with State Farm failed.  State Farm retained a Pennsylvania attorney to defend the action.  The settlement conferences and the trial took place in Pennsylvania.  Importantly, as I discussed above, several of the allegations that support Godfry's bad faith claims also occured in Pennsylvania during the pendency of the state court litigation.  These contacts include State Farm's alleged failure to settle the case for a reasonable value in light of the settlement conferences, and State Farm's alleged knowing use of perjured testimony during

the trial.  That these events took place in Pennsylvania during the course of a Pennsylvania civil action further demonstrates the "significant relationship" between Pennsylvania and Godfry's bad faith claims.

Accordingly, after review of all relevant contacts, both those set forth in the Restatement and those asserted by the parties, I find that Pennsylvania has more contacts with and a stronger relationship to the claims and parties in this case than does Delaware.

### 2. Interests

Lastly, I "must consider the 'interests and policies' that may be validly asserted by each jurisdiction." *Hammermill*, 480 F.3d at 235 (quoting *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)).  I outlined the relevant governmental interests *supra* in section II.B.  Because (1) plaintiff-insured is a Pennsylvania resident, (2) State Farm's claim representatives reached into Pennsylvania to administer the insurance claim, and (3) several of the alleged acts constituting bad faith occured in Pennsylvania, I find that Pennsylvania has a much stronger interest in the application of its law to this case.  Accordingly, after applying the Pennsylvania interests/contacts analysis, I hold that Pennsylvania has the most significant relationship to the transactions and parties involved in this case.  Therefore, I will apply Pennsylvania law to the remaining issues, and will deny State Farm's motion to dismiss Counts II and IV of Godfry's Complaint.

## III. Change of Venue

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The decision to grant a motion for a change of venue lies within the

discretion of the district court, but "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see also Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (reminding that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"). The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district. *Jumara*, 55 F.3d at 879. "There is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964); *see also Shutte*, 431 F.2d at 25 (reasoning that "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.").

The Third Circuit has enumerated several public and private factors for district courts to consider when determining whether to grant a motion for a transfer of venue. *Jumara*, 55 F.3d at 879. The private interests to be considered include: (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable at trial; and (6) the location of the books and records, similarly limited to the extent that files could not be produced in the alternative forum. *Id.* The public interests to be considered include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the local interest in deciding local controversies at home; (4) the public policies of the fora; and (5) judicial familiarity with the applicable state law. *Id.* at 879-80. While examining these

21

factors, courts must be mindful that the plaintiff's choice of forum deserves great weight.  *Id.*

The first consideration under § 1404(a) is whether venue is proper in the District of Delaware, where State Farm seeks to have this case transferred.  State Farm asserts, and Godfry does not contest, that State Farm conducts business in Delaware.  As the District of Delaware encompasses the entire state of Delaware, State Farm "resides" in the District of Delaware.  *See* 28 U.S.C. § 1391(a)(1) (providing that in diversity action, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State"); § 1391(c) (providing that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced").  This case therefore could have been brought in the District of Delaware, and I must now consider the private and public factors to determine whether a change of venue is appropriate.

Because defendant clearly has not met its burden, my discussion of the private and public factors is brief.  I turn first to the private factors.  The first two private factors focus on the parties' choice of forum.  Godfry resides in and chose to file this action with the Eastern District of Pennsylvania, and I must afford this decision great weight.  *See Jumara*, 55 F.3d at 879.  That State Farm would rather defend in Delaware does not overcome the weight attached to Godfry's choice of forum.  Thus, the first two factors weigh in Godfry's favor.  Next, State Farm argues that because the events giving rise to Godfry's claims occured in Delaware, the third factor weighs in its favor.  Rather, as discussed in detail above, the transactions giving rise to the instant bad faith claims allegedly occured in both Delaware and Pennsylvania, and primarily in Pennsylvania.  Accordingly, the third factor is, at best for State Farm, neutral.  Finally, State Farm, which bears the burden on this issue, has not addressed factors four through six.  In sum,

although State Farm prefers to proceed in the District of Delaware, State Farm has not demonstrated that the relevant private factors weigh in favor of transfer.

The public factors also weigh in Godfry's favor.  Neither party addressed the first factor (enforcement of judgment), but no evidence suggests any problem in that respect.  Likewise, defendant has not highlighted any practical hurdles or administrative difficulties that would arise if the case proceeds in this district.  Next, as discussed repeatedly above, Pennsylvania has an interest in having Godfry's claims decided in this district, as Godfry is a resident of Pennsylvania and an insured under the insurance policy and because several of the transactions giving rise to this action purportedly occured in Pennsylvania.  Finally, Pennsylvania law applies to this case, and the court is familiar with Pennsylvania law.  On the other hand, State Farm has not identified a single public policy that favors transfer of this case to the District of Delaware.[17]  Accordingly, the public factors weigh in Godfry's favor.

Godfry's choice of forum commands a great amount of deference.  Although § 1404(a) permits transfer under certain circumstances, this case does not present such a situation.  State Farm has not met its burden of demonstrating that convenience and justice would be served by transferring this action to another district.  Instead, the relevant factors to consider when determining whether to transfer under § 1404(a) weigh in favor of retaining, rather than transferring this case.  Accordingly, I will deny State Farm's motion to change venue.

## IV.    Conclusion

In conclusion, as Godfry concedes the dismissal of Counts I and III of his Complaint, I

---

[17] Again, State Farm merely reminds the court that the accident occured in Delaware and the subsequent insurance claim arose under a Delaware insurance policy.

23

will dismiss these Counts with prejudice.  Second, after applying the Pennsylvania choice of law analysis, I find that Pennsylvania has a more significant relationship to the parties and transactions underlying Godfry's claims.  Accordingly, I hold that Pennsylvania law applies to this case, and I will deny State Farm's motion to dismiss Counts II and IV accordingly.  Finally, I will deny State Farm's motion to transfer this action to the District of Delaware.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAMESON GODFRY, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-4813 |
| STATE FARM MUTUAL INSURANCE CO., | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## Order

**AND NOW** this 4th day of March 2009, upon consideration of defendant's motion to dismiss (Doc. No. 4) and motion for change of venue (Doc. No. 4), plaintiff's response thereto and defendant's reply, **IT IS HEREBY ORDERED** that:

1.  By agreement of counsel, defendant's motion to dismiss Counts I and III is **GRANTED** and Counts I and III are **DISMISSED** with prejudice.

2.  The balance of defendant's motion is **DENIED**.

<u>s/ William H. Yohn Jr., Judge</u>
William H. Yohn Jr., Judge